IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 16-403-2 |
| | : | |
| TANAYA MARTIN | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                **October 30, 2025**

Tanaya Martin seeks a sentence reduction under 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the United States Sentencing Guidelines. Martin has also submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on her family circumstances. Because Martin is not eligible for relief under either provision, her motions will be denied.

**BACKGROUND**

In January 2018, Martin pled guilty to charges of bank robbery, in violation of 18 U.S.C. § 2113(a); conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); aiding and abetting the use and carrying a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2; and two counts of tampering with a witness or victim and aiding and abetting, in violation of 18 U.S.C. §§ 1512(b)(2) and 2. The charges arose out of Martin's participation in two robberies and her subsequent efforts to dissuade witnesses and victims of the second robbery from testifying about it.

In anticipation of sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR), which calculated Martin's sentencing range under the Sentencing Guidelines. The PSR assigned Martin a total offense level of 28. PSR ¶ 55. Martin was also assigned one criminal history point for a 2013 state court conviction, resulting in a criminal history category of I. *Id.* ¶¶ 57-59. With an offense level of 28 and a criminal history category of I,

Martin's guideline range was 78 to 97 months. *Id.* ¶ 103. She was also subject to a mandatory minimum consecutive sentence of 84 months on the § 924(c) count, resulting in an effective advisory guideline range of 162 to 181 months. *Id.* ¶ 103. At sentencing, the Honorable Eduardo Robreno, to whom the case was then assigned, sentenced Martin to a total of 138 months, consisting of a below-guideline sentence of 54 months on the robbery and tampering counts, plus 84 months on the § 924(c) count. Judgment 2, ECF No. 388.

Martin later unsuccessfully sought relief from her § 924(c) conviction pursuant to 28 U.S.C. § 2255 based on the United States Supreme Court's decision in *United States v. Davis*, 588 U.S. 445 (2019). She now seeks a sentence reduction under 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the United States Sentencing Guidelines. She also seeks compassionate release based on her family circumstances under 18 U.S.C. § 3582(c)(1)(A)(i). The Government opposes both motions.

**DISCUSSION**

Section 3582(c)(2) permits a court to reduce the sentence of "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." A court may grant a sentence reduction under § 3582(c)(2) only if "a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." 18 U.S.C. § 3582(c)(2); *Dillon v. United States*, 560 U.S. 817, 826 (2010).

The applicable policy statement is set forth in U.S.S.G. § 1B1.10, which "contains its own, more specific requirements for a sentencing reduction." *United States v. Rodriguez*, 855 F.3d 526, 529 (3d Cir. 2017). To qualify for a reduction under that provision, a defendant must rely on a

guideline amendment that the Sentencing Commission has made retroactive, and the amendment in question must "have the effect of lowering the defendant's applicable guideline range." *Id.* (quoting U.S.S.G. § 1B1.10(a)(2)(B)). To determine whether an amendment has the required effect, a court must "begin by 'determin[ing] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 560 U.S. at 827 (quoting U.S.S.G. § 1B1.10(b)(1)). In making this determination, the court may "substitute only the [relevant amendment] for the corresponding guideline provisions that were applied when the defendant was sentenced," leaving "all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). If the amendment has the effect of lowering the defendant's applicable guideline range, then the court must consider any applicable § 3553(a) factors and determine whether, in its discretion, to grant a sentence reduction. *Dillon*, 560 U.S. at 827.

Martin relies on Amendment 821 to the Sentencing Guidelines, which made certain changes regarding the calculation of a defendant's criminal history score. As relevant here, Part B, Subpart 1 of the Amendment created a new guideline provision—U.S.S.G. § 4C1.1—which provides for a two-level decrease in offense level for defendants who did not receive any criminal history points (so-called "zero-point offenders") and whose offense of conviction did not involve certain specified aggravating factors listed in the guideline. *See* U.S.S.G. Supp. to App. C, Amend 821. This portion of the Amendment applies retroactively. *See* U.S.S.G. Supp. to App. C, Amend. 825; U.S.S.G. § 1B1.10(d).

To be eligible for a sentence reduction as a zero-point offender, a defendant must not have received any criminal history points and must meet ten additional criteria, including that "the defendant did not use violence or credible threats of violence in connection with the offense."

3

U.S.S.G. § 4C1.1(a)(3). Martin does not satisfy these requirements. As discussed above, Martin received one criminal history point for a prior state-court conviction. She argues she is nevertheless eligible because the conviction—for simple assault and recklessly endangering another person—should not have been counted. But the Court cannot revisit this aspect of Martin's guideline calculation, which is unaffected by Amendment 821. *See* U.S.S.G. § 1B1.10(b)(1) (directing courts to "substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and [to] leave all other guideline application decisions unaffected"). Moreover, Martin's argument that the conviction should not have been counted—either because the offenses were misdemeanors or because she was sentenced to six months of probation—is incorrect in any event. While certain misdemeanor offenses are excluded from the criminal history calculation, assault and reckless endangerment are not among (or similar to) the excluded offenses. *See* U.S.S.G. § 4A1.2(c); *United States v. Coffee*, 293 F. App'x 904, 906 (3d Cir. 2008) (holding a prior simple assault conviction was properly included in calculating a defendant's criminal history score). Further, Martin's sentence of probation was properly counted toward her criminal history score pursuant to U.S.S.G. § 4A1.1(c). *See, e.g.*, U.S.S.G. § 4A1.2 cmt. n.2 ("A sentence of probation is to be treated as a sentence under § 4A1.1(c) unless a condition of probation requiring imprisonment of at least sixty days was imposed."). Finally, even if Martin did not receive any criminal history points, she would not qualify for a sentence reduction under the new § 4C1.1 because she received a two-point enhancement under U.S.S.G. § 2B3.1(b)(2)(F) for making a threat of death during one of the robberies. PSR ¶ 36. As a result, she does not meet the requirement that the defendant must not have "use[d] violence or credible threats of violence in connection with the offense." U.S.S.G.

§ 4C1.1(a)(3). Because Martin is not eligible for sentence reduction as zero-point offender, her motion based on Amendment 821 will be denied.

Martin also seeks compassionate release under § 3582(c)(1)(A)(i) based on her family circumstances. She states that her mother, who has been sick for a few years and is the primary caregiver for Martin's 11-year-old daughter, is experiencing deteriorating health. ECF No. 469 at 1. Martin's daughter has also lived with her paternal grandmother while Martin has been incarcerated, but she began to show signs of depression while in that living situation and is better off in Martin's mother's care. *Id.* at 1-2. Martin seeks immediate release so she can be of more help to both her mother and her daughter. *Id.* at 2.

Section 3582(c)(1)(A)(i) "allows a sentencing court to reduce the sentence of a prisoner if 'extraordinary and compelling reasons warrant such a reduction' and the reduction is consistent with both the [Sentencing] Commission's policy statements and the sentencing factors set forth in 18 U.S.C. § 3553(a)." *United States v. Rutherford*, 120 F.4th 360, 364 (3d Cir. 2024), *cert. granted*, 145 S. Ct. 2776 (2025). While the existence of extraordinary and compelling reasons is a "threshold eligibility hurdle" for compassionate release, the statute does not further define the phrase. *Id.* at 365 (citation omitted). Instead, Congress "instructed the [Sentencing] Commission to define it." *Id.* (citing 28 U.S.C. § 994(t)). The Commission's definition is set forth in a policy statement codified at U.S.S.G. § 1B1.13, which identifies various circumstances in which extraordinary and compelling reasons for a sentence reduction will be deemed to exist. With regard to a defendant's family circumstances, the policy statement provides that extraordinary and compelling reasons may exist based on the "incapacitation of the caregiver of the defendant's minor child," U.S.S.G. § 1B1.13(b)(3)(A), or "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent," U.S.S.G. § 1B1.13(b)(3)(C).

The movant "bears the burden of establishing extraordinary and compelling circumstances." *United States v. Barbee*, 25 F. 4th 531, 532 (7th Cir. 2022); *see also United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *1 (3d Cir. Apr. 20, 2022) (citing *Barbee*, 25 F. 4th at 532).

Based on the current record, Martin has not satisfied her burden to show extraordinary and compelling circumstances warranting a sentence reduction are present in this case. Martin characterizes her mother as suffering from "severe medical conditions," noting that prolonged sitting in hard chairs and standing cause her mother to experience pain and that some days she is unable to get out of bed. ECF No. 469 at 1. She has provided no evidence regarding mother's medical condition.[1] And her allegations fall short of establishing that her mother is "incapacitated," as they do not show she is incapable of caring for herself or Martin's daughter as a result of her medical issues.[2] On the contrary, Martin suggests her daughter is doing well in her

---

[1] Although Martin's motion suggests she was enclosing copies of her mother's medical records, no records were provided to the Court.

[2] The policy statement does not define the term "incapacitation." As this Court has previously recognized, in the absence of a definition, district courts within the Third Circuit have looked to the Bureau of Prisons' non-binding program statement on compassionate release for guidance. *See United States v. Perez*, No. 03-554, 2025 WL 28235, at *6 (E.D. Pa. Jan. 3, 2025). The program statement defines incapacitation of the caregiver of a defendant's child to mean "the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement No. 5050.50 at 7 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf [https://perma.cc/75GD-9L3N] (last visited Oct. 30, 2025). The program statement does not include a separate definition of incapacitation of a defendant's parent, which was not among the "extraordinary and compelling reasons" listed in § 1B1.13 at the time the statement was issued in 2019. However, it defines incapacitation of a defendant's spouse or registered partner to mean that a person either (1) has "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [person] is completely disabled, meaning that the [person] cannot carry on any self-care and is totally confined to a bed or chair," or (2) has "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [person's] mental capacity or function), but may not be confined to a bed or chair." *Id.* at 10. Given the amendment of the compassionate release statute in 2018 to permit prisoners to file

mother's care and assists her mother with tasks she is "at times unable to do around the house or for herself." *Id.* at 2.  Martin has also provided no evidence that she is the only available caregiver for either her mother or her daughter.  Accordingly, her request for compassionate release will be denied.

    An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

motions on their own behalf, some courts have suggested that "*solely* relying on BOP's definition of 'incapacitation' is inappropriate," as the amendment allows courts to grant relief even when the BOP finds it is not warranted.  *United States v. Taveras*, 731 F. Supp. 3d 94, 98-99 (D. Mass. 2024) (emphasis added).  Nevertheless, it is appropriate "for courts to consider the [program statement] as helpful guidance," even if it "might be more restrictive than the permissible standard for compassionate release."  *United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 154092, at *2 n.3 (4th Cir. May 30, 2025).  Notably, Martin's brief allegations regarding her mother's health issues fall far short of showing she is incapacitated under either definition.

7